UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIM ZVIK,

               Plaintiff,

    v.

MARCY ROTH,

               Defendant.

Case No. 25-cv-03807-HSG

**ORDER GRANTING MOTION TO STRIKE**

Re: Dkt. No. 32

United States District Court
Northern District of California

       Pending before the Court is Defendant's motion to strike. *See* Dkt. No. 32 ("Mot."); Dkt. No. 37 ("Opp."); Dkt. No. 40 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).[1] For the reasons discussed below, the Court **GRANTS** the motion to strike.

## I.    BACKGROUND

       Plaintiff Kim Zvik filed the operative first amended complaint against Defendant Marcy Roth in July 2025, alleging defamation, interference with contractual and prospective economic relations, and copyright infringement. *See* Dkt. No. 26 ("FAC"). The dispute centers around a horse named Cookie, which Defendant sold to Plaintiff in July 2024. *Id.* ¶ 5. Defendant allegedly sought to repurchase Cookie after the sale and eventually began to interfere with Plaintiff's ownership of the horse. *Id.* ¶¶ 7–10. This conflict escalated, and Defendant ultimately contacted the Contra Costa County Animal Services Department in early February 2025, accusing Plaintiff of animal abuse and neglect and calling her "an evil woman" who had "starved horses in the past." *Id.* ¶ 11. Animal Services apparently visited Cookie on February 14, 2025, and found that Cookie

---

[1] The Court held a hearing partially related to this motion on August 28, 2025, Dkt. No. 41, but the matter was submitted without substantive argument.

was "thin to very thin" and needed to be put on a weight gain plan. FAC, Ex. B ("Animal Services Report") at 29. Animal Services also "advised [Plaintiff] of her responsibilities under Penal Code 597." *Id.*[2]

Plaintiff alleges that Defendant then began a "defamation campaign" through "over twenty . . . posts, photographs, videos, and profiles" that stated that Plaintiff was "engaged in animal abuse and neglect" and revealed Plaintiff's private information. FAC ¶ 12 (citing FAC, Ex. C ("Social Media Posts")). Defendant also allegedly began to make "the same defamatory allegations" to the Orinda Horse Association ("OHA"), where Cookie was pastured. FAC ¶ 14 (citing FAC, Ex. E ("OHA Emails")).[3]

Plaintiff asserts claims for defamation (libel and slander) arising out of Defendant's statements to Animal Services and OHA and her social media posts. FAC ¶¶ 32–45. Plaintiff also asserts claims for intentional interference with contractual relations and negligent and intentional interference with prospective economic relations, all relating to her relationship with OHA, the American Endurance Ride Conference ("AERC"), and OHA's landlord ("EBMUD"). *Id.* ¶¶ 14–15, 46–63. Finally, Plaintiff asserts a claim for copyright infringement, alleging that Defendant used Plaintiff's copyrighted work in a social media post without her permission. *Id.* ¶¶ 19–31.

## II.    LEGAL STANDARD

Under California's anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The statute was enacted to curtail "strategic lawsuits against public participation" that were "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition

---

[2] California Penal Code § 597 criminalizes various forms of animal cruelty.

[3] The posts, emails, and Animal Services report are all incorporated by reference, since Plaintiff has attached these documents as exhibits to her complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. Proc. 10(c)).

United States District Court
Northern District of California

for the redress of grievances." *Id.* § 425.16(a). Because "it is in the public interest to encourage continued participation in matters of public significance, and [because] this participation should not be chilled through abuse of the judicial process," the anti-SLAPP statute is to be construed broadly. *Id.*[4]

California courts apply a two-step process for analyzing an anti-SLAPP motion. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). Under the first prong, the moving party must make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the . . . right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). If the moving party meets its threshold showing, then the burden shifts to the non-moving party to demonstrate a probability of prevailing on the claim. *See Equilon*, 29 Cal. 4th at 67.[5]

## III. DISCUSSION

Defendant argues that all the state law claims arise out of protected speech and that Plaintiff has not shown a reasonable probability of prevailing on her claims. Mot. at 11.

### i. Claims Arising from Protected Activity

At the first stage, a "court must decide whether the defendant has made a threshold

---

[4] Since 1999, the Ninth Circuit has determined that the motion to strike and attorneys' fees provisions of California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(b)–(c), are available in federal court because there is no "direct collision with the Federal Rules," *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972–73 (9th Cir. 1999) (quotation omitted). Yet a number of judges have questioned this holding. *See, e.g., Gopher Media LLC v. Melone*, 154 F.4th 696, 709–21 (9th Cir. 2025) (Bress, J., concurring); *Makaeff v. Trump Univ., LLC,* 736 F.3d 1180, 1188–90 (9th Cir. 2013) (Watford, J., dissenting); *cf. Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–37 (D.C. Cir. 2015) (rejecting application of District of Columbia's anti-SLAPP statute in federal court). The Court applies the statute in this case as required by binding case law, but shares the concern that this interpretation of the statute "vastly understates the disruption when federal courts apply the California anti-SLAPP statute," particularly as it interacts with Rule 12 and its plausibility standard. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, J., concurring).

[5] "If a defendant moves to strike on purely legal arguments, courts must analyze the motion under [Federal] Rules [of Civil Procedure] 8 and 12, but where a defendant asserts a factual challenge, courts must treat the motion to strike as a motion for summary judgment, triggering discovery." *Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) (quotation omitted). Here, the Court grants the motion based purely on legal arguments.

showing that the challenged cause of action arose from the defendant's protected activity." *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal. App. 4th 1237, 1244 (2013). A cause of action "arises from" conduct that it is "based on." *Id.* at 1244–45. Plaintiff brings state law claims for (1) defamation; (2) intentional interference with contractual relations; (3) intentional interference with prospective economic relations; and (4) negligent interference with prospective economic relations. *See* FAC at ¶¶ 32–63. Defendant argues that each of these claims is based on allegedly defamatory statements that Defendant made to Animal Services, on social media, and to OHA. Mot. at 16–17. Plaintiff does not appear to dispute that each of the state law claims arose out of the same statements at issue. Instead, the parties dispute whether Defendant's statements constituted protected activity. *See id.* at 17–19; Opp. at 22–25.

The Court finds that Defendant's statements qualify as protected free speech or petitioning under the first prong of the anti-SLAPP statute. First, Defendant's statements to Animal Services were "written or oral statement[s] or writing[s] made before . . . any other official proceeding authorized by law" and/or "written or oral statement[s] or writing[s] made in connection with an issue under consideration or review by . . . any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e)(1)–(2); *cf. Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1570 (2005) (noting that "reports of child abuse to persons who are bound by law to investigate the report or to transmit the report to the authorities are protected by the [anti-SLAPP] statute" under subdivision (e)(2)); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 966 (2014) (finding that the "making of allegedly false police reports . . . was in furtherance of defendants' constitutional right of petition").

Plaintiff argues that that these subdivisions of § 425.16 only apply protection for statements which "are not false or made with a reckless disregard as to their truth or falsity." Opp. at 23. Where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." *Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006). But "the making of allegedly false police reports . . . can be protected petitioning activity under the first prong of the anti-SLAPP statute" where, as here, "the falsity of the report is controverted." *Kenne*, 230 Cal. App. 4th at 966. Plaintiff asserts that there "is

United States District Court
Northern District of California

uncontroverted and conclusive [evidence] that Defendant . . . engaged in activities which are illegal," Opp. at 21, but she does not identify what in the cited declarations supports this conclusion.  In fact, the evidence appears to support Defendant's claims, as Animal Services shared Defendant's concerns.  *See* Animal Services Report at 29 (noting Cookie was thin to very thin and would need to begin a weight gain plan).

Next, Defendant's social media posts and statements to OHA are protected "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(4).  To determine whether conduct falls within the scope of this subsection, the Court must (1) identify what public issue or issue of public interest is implicated by the speech; and (2) "ask what functional relationships exists between the speech and the public conversation about some matter of public interest."  *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149–50 (2019).  At the first step, an issue of public interest may include "conduct that could directly affect a large number of people beyond the direct participants" or "a topic of widespread, public interest."  *Rivero v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003).  At the second step, the speech must contribute to conversation on the issue of public interest, as analyzed through "particular context of the speech, including the speaker's identity; the 'purpose' of the speech; the nature of the audience and the intended audience; and the 'timing' and 'location' of the communication."  *Murray v. Tran*, 55 Cal. App. 5th 10, 30 (2020).

Here, Defendant's statements addressed an issue of public interest—animal welfare in the horsing community—and contributed to conversation about that topic by exposing alleged problems in the community and encouraging communal action for Cookie and other horses.  For example, Defendant asked other Facebook users to (1) encourage AERC to "look out for these horses [and] enforce stricter standards for body condition, saddle fit and care"; (2) encourage OHA "to feed starving horses themselves if they have to"; (3) contact Animal Services and "ask them to diligently monitor the care of Cookie and Comet;" and (4) message Plaintiff to "demand she re-home her horses if she can't feed them."  Social Media Posts at 33–34; *see also id.* at 36 (encouraging users to contact AERC and Contra Costa Animal Services); OHA Emails at 45–48

(discussing similar statements encouraging OHA to let horses go to other facilities).

Plaintiff argues that Defendant's statements did not relate to an issue of public interest because they were directed at "a single owner and the health and welfare of that owner's [h]orse." Opp. at 24. However, animal practices in these communities and the allegedly ongoing health issues of two horses on public land constitute "something of concern to a substantial number of people," *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003), and relate to "conduct that could directly affect a large number" of other animal owners, *Rivero*, 105 Cal. App. 4th at 924. *Cf. Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 397 (2004) (finding comments about controversy in cat breeding community constituted matter of public interest). Given this, the Court finds that the state law claims arise out of protected speech activity, and the burden shifts to Plaintiff to demonstrate a reasonable probability of prevailing.

### ii. Reasonable Probability of Prevailing

#### a. Defamation Claims

Defendant argues that Plaintiff has not met her burden of demonstrating a reasonable probability of prevailing on her defamation claims because (1) her statements are protected by the litigation privilege, Cal. Civ. Code § 47(b); (2) her statements are protected by the common interest privilege, Cal. Civ. Code § 47(c); (3) her statements were substantially true; (4) Plaintiff has not adequately alleged that Defendant failed to use reasonable care; and (5) her statements are non-actionable opinions. Mot. at 19–30.

##### i. Statements to Animal Services

Defendant first argues that her statements to Animal Services are protected by California's litigation privilege. The litigation privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990). This applies to "communications or complaints by citizens to public officials or authorities charged with investigating, prosecuting[,] or remedying alleged wrongdoing." *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 30 (1997). Defendant's complaints to Animal Services about

suspected animal abuse and neglect, FAC ¶ 11, clearly fall within the scope of this privilege.  *See Edwards*, 53 Cal. App. 4th at 30.

Plaintiff argues that Defendant's statements were "actually false" or made "with a reckless disregard of the truth or falsity that Plaintiff . . . actually committed criminal animal cruelty" and are excluded from the privilege under newly-amended California Civil Code § 47(b)(5).  Opp. at 27.  That subdivision excludes "any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report."  Cal. Civ. Code § 47(b)(5).  This subdivision was added in a 2021 amendment, converting what was formerly an absolute privilege into a qualified privilege.  *King v. City of Sacramento*, No. 2:20-CV-01326-KJM-DB, 2022 WL 37048, at *3 (E.D. Cal. Jan. 4, 2022); *cf. Kerner v. Superior Court*, 206 Cal. App. 4th 84, 121 (2012) (pre-amendment decision noting that "[w]hen a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication also enjoys an unqualified privilege" (quotation omitted)).  Only a few courts have had to address the impact of this amendment.

Ultimately, Plaintiff has not plausibly alleged that Defendant's statements to Animal Services were false or made with at least a reckless disregard for the truth or falsity of the claims.  The Animal Services report—incorporated by reference into the complaint—stated that (1) Cookie was "thin to very thin" on February 14, 2025, and would need to be put on a weight gain plan and (2) Animal Services had admonished Plaintiff regarding her responsibilities under California's animal cruelty statute.  Animal Services Report at 29.  Plaintiff does not adequately explain what else in her complaint supports a plausible inference that Defendant's essentially validated statements were false or made with at least a reckless disregard for the truth.  Plaintiff argues that her veterinarians found that Cookie was in "normal" condition on February 25, 2025.  Opp. at 27 n.9; FAC ¶ 11.  But a contradictory veterinarian report showing improvement after the fact does not plausibly suggest that Defendant's prior statements were false at the time they were made. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (noting that the

Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" (quotation omitted)).  Plaintiff claims that Defendant "freely admits" she made a false report, Opp. at 27, but the allegations do not support that proposition.

Plaintiff also argues that her veterinarians found that Cookie was in "normal" condition again on March 27, 2025, *id.* at 27 n.9, and that Defendant admitted in a declaration that she made false claims, *id.* at 27.  First, the Court need not consider this outside evidence when Defendant presents an adequate, purely legal basis to strike these claims on the pleadings.  *See* Reply at 15 (encouraging the Court to reject these declarations); *Gunn*, 65 F.4th at 1120.  Second, Defendant's declaration simply states that she "contacted Contra Costa County Animal Services to report that Cookie was not being fed enough, was worked too hard, had lost too much weight, and appeared to be unhealthy," "spoke to Animal Services several times to provide information at the request of investigators," and "told Animal Services that other horses on OHA land were not being sufficiently fed."  *See* Dkt. No. 19-1 ¶¶ 24, 26.  Plaintiff does not explain how this admits falsity, and it plainly does not.  As a result, Plaintiff has not met her burden to demonstrate a reasonable probability of overcoming the litigation privilege.

### ii.  Social Media Posts and OHA Statements

Defendant similarly argues that Plaintiff does not adequately plead that Defendant failed to use reasonable care to determine the truth or falsity of the social media posts or OHA statements.  Mot. at 27–28.  This is a requirement for libel and slander claims.  *Hecimovich v. Encinal Sch. Parent Tchr. Org.*, 203 Cal. App. 4th 450, 470 (2012); *see also* CACI 1702–05.  Plaintiff barely responds to this, stating that "the declarations of the parties, the declarations of the treating veterinarians[,] and the Animal Services reports of April 1, 2025, and May 2, 2025, confirm that Defendant . . . absolutely failed to use reasonable care to determine the truth or falsity of her claims against Plaintiff."  Opp. at 30.  As before, many of these facts were not pleaded in or attached to the complaint.  The factual allegations that the Court can identify imply Defendant *did* use reasonable care—Defendant saw pictures of Cookie that indicated weight loss, contacted Plaintiff, visited Cookie, and reported her concerns to Animal Services, who effectively validated those concerns.  FAC ¶¶ 9–11; Animal Services Report at 29.  As a result, the Court cannot

United States District Court
Northern District of California

United States District Court
Northern District of California

plausibly infer that Defendant failed to use reasonable care, and Plaintiff's generic reference to the record is insufficient to meet her burden. *Cf. Todd v. Lovecruft*, No. 19-CV-01751-DMR, 2020 WL 60199, at \*19 (N.D. Cal. Jan. 6, 2020) (striking for failure to allege lack of reasonable care and noting that "even if [defendant] had a motivation to lie, motivation alone cannot establish negligence").[6] The Court **GRANTS** Defendant's motion to strike the remaining defamation claims.[7]

### b. Interference Claims

Defendant argues that Plaintiff cannot meet her burden because she does not plead intent, actual or foreseeable disruption of an economic relationship, or damage to any economic relationship. Mot. at 30. All three interference claims require Plaintiff to plead actual disruption of the relevant relationship. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (intentional interference with contractual relations and prospective economic relations); *Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827, 844 n.5 (2020) (negligent interference with prospective economic relations). Plaintiff asserts that her relationships with OHA, EBMUD, and AERC were disrupted, FAC ¶¶ 48, 53, 62, but she offers no factual support for these claims, and she does not meaningfully grapple with Defendant's argument in her opposition. Instead, Plaintiff argues that Defendant was required to raise this argument in the first motion to dismiss. Opp. at 31. Plaintiff does not provide any support for this proposition, and she does not otherwise argue that the anti-SLAPP motion was untimely.[8] The Court **GRANTS** Defendant's motion to strike on this ground.

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion to strike. Dkt. No. 32. "[G]ranting a

---

[6] While intent may be alleged generally under Rule 9(b), *see* FAC ¶¶ 36, 43, that "does not give [Plaintiff] license to evade the less rigid—though still operative—strictures of Rule 8." *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009).

[7] The Court does not reach Defendant's other arguments.

[8] Defendant did raise this argument in her first anti-SLAPP motion, which Defendant re-filed after Plaintiff filed her first amended complaint. *See* Dkt. No. 20.

United States District Court
Northern District of California

defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). While this is Plaintiff's first amended complaint, it is also the first complaint that the Court has considered. The Court cannot conclude that amendment necessarily would be futile here. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (noting that the court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts" (quotation omitted)). Thus, the Court grants leave to amend these claims.[9] Any amended complaint must be filed within 21 days of the date of this order, and may not add any new claims or defendants.

The Court further **SETS** a case management conference on March 10, 2026, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The parties are further **DIRECTED** to file a joint case management statement by March 3, 2026.

    **IT IS SO ORDERED.**

Dated:  2/24/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[9] This does not mean that Plaintiff must amend her claims. If Plaintiff amends her claims and loses another anti-SLAPP motion, she will likely be liable for additional attorneys' fees. Plaintiff should carefully determine whether she can adequately state a claim with additional facts.